2 cases to be argued this morning. The first one is number 065087 Messick v. United States Miss Kim. May it please the court, it is no doubt tragic that Christopher Kangas lost his life at such a young age. That fact, however, does not alter the legal conclusion that he was not a firefighter because he was prohibited by state law from inciting fires. Under Pennsylvania law, minors 16 and 17 years of age are permitted to engage in firefighting activities under the supervision and direct control of a senior firefighter. Minors less than 16 years of age, however, are not permitted to engage in firefighting activities. The law specifically says that they are limited to four activities, which are training, cleaning up after a fire is under control, providing first aid, and providing food and water. If the individual in this case had been 16, would this case come out differently? That's correct, Your Honor. It would, you say? Yes, Your Honor. It would come out differently. So the question turns entirely on authorization to engage in certain types of conduct as opposed to whether the individual was in fact engaged in that conduct at the time. That's correct, Your Honor. The agency's determination is focused on the individual's authority to engage in firefighting or enforcement of criminal laws, whichever is applicable here. The agency has consistently applied that criteria in determining whether an individual is a law enforcement officer and whether that individual is a firefighter. Now the term, I guess, is suppression of fires is the regulatory term that pertains here? That's correct, Your Honor. Now what is the regulatory definition of suppression of fires? In other words, when do we know that someone is suppressing fires? If somebody's job is to lay out the hoses, for example, why is it, according to the agency, that that isn't suppression of fires? Your Honor, the agency doesn't have a regulatory definition for suppression of fires. However, they... But the argument that I understand the agency's making is that they have, by adjudication, established a standard for what constitutes suppression of fires. In this case, it doesn't satisfy that. That's correct, Your Honor. Right. All right. And so what is this adjudicative distinction that the agency has made? The distinction is between whether that person has authority to fight fires and whether that person... Well, yeah, but that skips over the question of what constitutes fighting fires. I mean, we're talking about suppression of fires is the pertinent language, right? So how do we know that somebody who lays out hoses but doesn't, and perhaps is not even authorized to actually walk into the building, is not suppressing fires? That's correct, Your Honor. I think we have to look at the ordinary meaning of the word firefighter, which is Congress presumed to adopt when they were adopting the statute. And if you look at the dictionary, the definition of firefighter is a person who fights fires. If a person is prohibited from fighting fires... You're skipping over what seems to me the hard question here, which is what constitutes fighting the fire? Why am I not fighting the fire if I'm laying out hoses and connecting the hoses and doing everything which is critical on the spot to putting the fire out? Well, under Pennsylvania law... Other than walking into the building. Under Pennsylvania law, I'm not sure that they are permitted to put together hoses before a fire in order to put out the fire. They're only allowed to clean up the hoses after the fire is under control. I think just based on common sense... But it's stated that this boy was putting together the hoses, isn't that right? And I don't recall anything saying that he was violating any law or practice in what he was doing. No, Your Honor. At the time of Christopher's death, he was on his way to the fire station after he was fired. But you haven't raised the question at all that traveling to or fro the site of the fire or the firehouse is a distinction. That's correct, Your Honor. The agency's position was not that he was excluded from benefits because he was traveling to the fire station. The agency's position that he was precluded because he doesn't even have authority to fight a fire. Well, suppose you have somebody who fights forest fires, typically. So there aren't any buildings, or not many. They're out there. And you have a crew of five people. One of whom is principally responsible for driving the truck to the site of the fire. Another of whom is responsible for spreading, let's say, cutting away brush to keep the fire from spreading over fire lines. And three others who are responsible for actually going into the wooded area and trying to directly deal with fire. Would the agency say that the first two do not get firefighter coverage, but the last three do? Are you assuming in your hypothetical that they are all members of the fire department and that they are all authorized to fight fires? The fire department has a rule which says that, for reasons known only to them, that people who are handling taking out the brush, people who drive the truck drive the truck, people who actually man hoses man hoses. They distinguish among them in that way, but nonetheless they're all there at the edge of the burning forest. Well, assuming that there is no law prohibiting them from fighting fires, that means that they have authority to fight fires. Yes, they would be covered. Well, let me ask you this way. Would the person who's chopping the brush away in the face of an oncoming fire, in order to try to keep the fire from jumping onto adjacent property, would that person be fighting fires according to the agency's understanding of what that term means? Well, under your hypothetical, I think we would have to look at the line of duty analysis, assuming that he is an authorized firefighter. Well, he's authorized to do what he's doing, which is to cut the brush away. It seems to me you can't say, well, a firefighter is somebody who is authorized to fight fires, and that's the end of the matter, without telling us what exactly is the parameter that the agency regards as constituting fighting fires. Well, I don't think we have to decide in this case what the parameters are. I think it's sufficient to say that training, cleaning up, and providing food and coffee is not fighting fire. Any person, layperson on the street, could be doing those jobs to assist a firefighter. And by saying that training and providing food and water constitutes firefighting, you're stretching the ordinary meaning of that word so far. That's not what the statute is supposed to guard against. If a person goes into the teeth of the flames to bring coffee to those who are doing whatever one does within the ambit of the fire itself, you're saying that's excluded from the special compensation or safeguards or whatever that goes with the general term firefighter? That's correct. Even the print miners... That's not the current law, is it? I mean, isn't there a concern that this was a boy who was not authorized to do the heavy work? And isn't it a factor that it's because he was on his bicycle going to the site of the fire that there's concern as to giving him full-fledged firefighter treatment? Well, the issue here is not whether he was on a bicycle on his way to the fire station or whether he was actually fighting fires at the time. Pennsylvania law, even when providing food and water, they can't enter the Burnham structure. They can only provide food and water outside of the structure. I think one of the representatives from the fire department testified at the hearing, correct? And I think he said that Christopher Kangas, in his duties, and you've enumerated them, he had to be working outside of the zone from which a building could collapse. Is that correct? I seem to recall that testimony. Now, what if you had a situation where someone in his circumstance was working outside what they thought was the zone of collapse, but someone had made a mistake or there was an explosion, and nevertheless it turned out that where he was performing his duties, albeit the duties that you've enumerated, brought him within the area where the building collapsed and he was killed? And you're assuming that that person is 14-year-olds? Still in this position. Your Honor, yes. He would be excluded because he still does not have authority to fight fires, regardless of whether where he was actually located inside the Burnham structure or outside the Burnham structure. The agency, in its interpretation of firefighter, which is not defined in that, has reasonably interpreted firefighter to be a person who is authorized to fight fires. And this court's recent decisions in Hopkins v. Kinsella has actually enforced that the proper… So your situation, you say, would be different if Pennsylvania law allowed him to do different things? That's correct, Your Honor. You know, the cases, as well as I remember them broadly, they have drawn a distinction between those who sat back at the desk and those who were out at risk. But this is quite a curious, narrow distinction that you're drawing with negative consequences for people who put themselves at risk as a firefighter. Your Honor, it's not a narrow distinction. It's an attempt to provide a bright-line test. This is a test that has been stamped by this court with approval, and Hopkins v. Kinsella, this court has said that the proper touchstone of whether an individual is a law enforcement officer or a firefighter for purposes of determining whether they're a public safety officer is whether they have actual authority to engage in these activities, whether it's fighting fires or enforcing law. Can I come back to my original question? Because I'm still not entirely satisfied that I understand the agency's position as to what constitutes fighting fires. You tell me that, well, the agency has got a clear position, which is a firefighter is somebody who fights fires, and as if that circular definition answers this case and all other cases in which problems can arise. It seems to me it doesn't. I'm still troubled by my example of the forest firefighters, not all of whom may actually be wielding a hose, but all of whom are essential to the task of fighting the fires. Now, does the agency give us any more help with respect to what is the line between someone who is in the clearest, most indisputable form of activity, fighting the fire, versus someone who is directly involved in the activity of fighting the fires but may not actually be manning a hose? Is there any help that we get from anything, either in the regulations or in any of the adjudications, that will give us a standard that the agency is applying in these cases? Your Honor, as far as I'm aware, there's no regulatory definition of what constitutes fighting fires or suppression of fires. When interpreting firefighter, their position, as well as with law enforcement officers, is to simply look at whether they have authority to do so. Authority to do what? Authority to do what? Fight fires. Yeah, but see, you keep coming back to authority to fight fires. I'm looking for something other than the circular statement that a firefighter is a person who has authority to fight fires with no guidance as to who those people are when you actually get down to the on-the-street question of whether person A, person B, and person C has authority to fight fires. Let's take my hose person that has authority to lay out the hoses. Is that person authorized to fight fires, and has the agency taken a position as to that question? I don't believe the agency has taken a position to that question. Maybe they have an administrative adjudication on fire. What's your view of that, as to what you think the agency's position is, as you understand it? If all that they are allowed to do is lay out hoses, and they're not allowed to enter the burning structure, or try to put out the fire from outside of the structure in any means, I don't believe that it constitutes fighting fires. Okay, can we move on? Thank you. All right, thank you, Ms. Kim. You have a minute for rebuttal. You can use it if you like. Can I finish up? Can I use a minute right now? It's up to you. Oh, I'm sorry. A minute left for rebuttal. You have a total. A total, okay. Thank you, Your Honor. Good morning, Your Honor. May it please the Court. I'm Frank Daly, and I'm the attorney representing the mother of the deceased firefighter. I think a good starting off point, from our perspective, would be what happened here after he died. And just indulge me for one brief moment. After his death, his tragic death, his brothers and sisters in the Brookhaven Fire Department filed the form to get the benefits for his mother, as the law said they could. When that application was denied, Ms. Amber Messick didn't file an appeal. She filed an appeal after she was informed that her son's name could not go on the National Fallen Firefighters Monument in Emmitsburg, Ireland. In short, she was told that her son was not going to be recognized as a firefighter. And where we would like to start our presentation is to read, and it's in the appendix at page 39, some language from the original House bill that talked about what this bill was supposed to do. And it said, in addition to providing direct financial compensation to the families of deceased firefighters, testimony before the committee indicates that this legislation will also significantly increase the morale of firefighters, firefighting personnel, and will greatly assist the state and local governments in their recruiting efforts. This bill also represents a recognition of and a practical expression of appreciation for the dedicated and meritorious services which have been provided by firefighters throughout the nation. I mention that because there's testimony that was presented that more than half of the volunteer firefighters in this country start out as junior firefighters. That we are sending a message, the wrong message, the message that Congress didn't want to send. They wanted to send a message, let's encourage people to put their lives on the line and donate their time and services. And if we go and draw a distinction, now Christopher Kangas was a member of this fire company, he was an active member, he was sworn in, nobody is disagreeing with that. He met the requirements, he was 14 years of age and of good moral character, and he was sworn in and voted. What the agency is making their determination on is provisions in the Pennsylvania child labor laws. There's no distinction within the Brookhaven Volunteer Fire Company's bylaws and charter and everything else about there are active members, there are inactive members, and there are senior members. And Christopher Kangas was an active member. Now, as I said, this whole case got started on the left foot because the hearing examiner went and looked at an old section of the Pennsylvania code that said two stunning things, stunning to my clients, the Brookhaven Fire Department. One, that a junior firefighter could not ride in a fire truck, and two, could not engage in any fire suppression, fire suppression, no, any fire fighting activities. Well, it turned out that the hearing officer was wrong, and it was corrected, but now we've started down the slippery slope, if I can use the phrase. It was corrected as to riding on the fire truck, correct? Sure. They have conceded that he absolutely has the right to ride on a fire truck. Were the other aspects of the statute changed? Your Honor, the whole thing was superseded by another statute, so I was just saying it got started on the left foot. What did the new statute provide with respect to activities on the scene? Yes. Ms. Kim is correct when she reads you the statute. It starts out saying that minor firefighters, meaning people under 18 years of age and who are members of the fire company, it does say they can engage in firefighting activities. Then it goes on to carve out 17 and 16 year olds and specifically says they can do firefighting activities. When you get to the 15 and 14 year olds, it does not specifically say they can't do firefighting activities. Where does it say they can do firefighting activities? The whole case of the Department of Justice is based upon an implication. It does not say they can't engage in firefighting activities. What it says is here's what they can do and here's what they can't do, but it's not really all encompassing. Let's look at the first one, what they can do. How about what they can't do? They can't go into burning buildings. They can't hold high pressure hoses. There's a third one, but it's similar. It's a very ultra-hazardous activity. It specifically says they can't do that while they're that age. But it does, and I do not think the Department of Justice is disagreeing. It does say they can ride on fire trucks. It does say they can be part of the team that engages in fire suppression, which goes back to what I believe Judge Bryson was attempting to get a definition of from the representative from the United States. We're talking about a concept called suppression of fires. We're not even talking about firefighting activities. If you look at the statute and the regulations, they only talk about suppression of fires, activity engaged in the suppression of fires. Your Honors, I can come up with countless scenarios like the court just did with the windshield or the exploding building that goes beyond the fire zone. Let's just look at what they can do. Do you realize that the training that these 14- and 15-year-olds do involves learning how to do the very things that they're not allowed to do until they're 16? So they go up high, dangerous ladders in training. They learn how to use air packs. They get certified in CPR. They learn how to attach the hoses under supervision. They just can't do it at the scene of a fire because of child labor laws. So the point is they're engaging in significantly hazardous activities. They could just as easily fall off that high ladder or have a real problem with a high-pressure hose as they could being the unfortunate person who's sitting in cab number two or seat number two on the fire truck that is properly going to a fire. And some fool goes through a red light and hits the fire truck, and the three firemen are killed inside the fire truck, and one of which happened to be 14 or 15 years old. Now how far, in your view, does the team concept extend? Well, Your Honor, interestingly enough— Well, for example, let me just— Sure. Some specific cases. The driver of the truck who's authorized to drive the truck to the scene of the fire but not to get out of the truck and do anything else, hypothetically. Sure. Is that person part of the team? Is that person a firefighter? Absolutely, Your Honor. All right. How about the dispatcher? Believe it or not, Your Honor, it's addressed in the—not the preamble, but the forward to the regulations that were adopted in 1977. Well, what— But the point is that it says— The dispatcher coverage? It says that even a person sitting at a desk is a public service officer. The argument was made that, oh, we'd be including everybody in that. The fact of the matter is their own regulations, or at least the preamble to it, the supplement, telling you what changed and what didn't, already envisions that a dispatcher, in fact, is somebody sitting at a desk job. Now, I didn't write that, and I'm not sure how far I would take that, but the BJA or its predecessor, the LEAA, wrote those words. They did. They're there. So they're focusing on are you a member of a bona fide agency. Well, nobody is. Now, let me make sure I understand your position. Sure. So you're saying that, as you understand the regulations, a person who's a dispatcher who dies not at a fire, having been called up on emergency duty to go fight the fire, but nonetheless who's not authorized to actually go in buildings, authorized to be a dispatcher, and who dies at his or her post by the telephone, that person is entitled to firefighter status under the regs? Yes. Your Honor, I'm in the absurd position of advocating something that was written. You're asking me to support something that was written by my opponent, and I'm really not here to take it that far, but I'm showing that their regs do. They didn't say the dispatcher, Your Honor. They said a person sitting at the desk. But don't forget that it has to have been involved with something hazardous that caused the death. So I don't know if the ceiling fell on the guy sitting at the desk and he died. They're that expansive in their view. Mr. Day, let me ask you, to what extent do you think we should accord any kind of deference to the determination of the agency here? Certainly there's a Chevron standard. Certainly there's deference. But even if there is deference, they've made an impermissible interpretation. Now, do you think that the statute here, the Public Safety Officers Benefit Act, which is the statute we're dealing with, do you think that is clear on its face as to its command, or do you think it's a situation where there is a gap in the statute as to whether someone in the position of Christopher Kangas does qualify as a public safety officer? Your Honor, I agree with Judge Horne. We found that it was unambiguous, that it's very clear in the statute. There's no gap. They've artificially created a gap. They've been very creative in doing so. So you're asking me directly, there's no gap. You read the legislative history... Even though the statute doesn't talk, I mean, if you... I guess if you hear the term firefighter, probably, which is used in the statute, I think. Firefighter includes a member of volunteer fire department, essentially. Right, okay. And that's under definitions. Would automatically someone in the position of Christopher Kangas come to mind in that setting alone? In other words, I'm saying, is there not a gap to be filled in by the agency here? Now, when you're talking about suppression of fires, maybe the word team has not appeared in the statute somewhere, but I think it is self-evident that fighting fires does take a team. In this case, it happens to be called the Brookhaven Volunteer Fire Department, and they even wear uniforms on my team. I think it's... If you do look at how firefighters attack a situation, it's not always a fire. It could be hazardous material, it could be any number of things. We just had people out looking for the hiker in mountains in Washington. You don't think there were some firefighters out in that. And by the way, 15-year-olds are allowed to go on search missions. So if the court was looking for things they can do that would be looked upon as hazardous on its face, that is one. What is your best response, you think, to the argument that the government makes that this case turns on what Pennsylvania statutes say? In other words, say you had a situation where a statute said someone who is at the age of 15 or younger, all they can do is work in the firehouse and perform duties in the firehouse. Your Honor, to use the other absurd example, if there's some explosion in the firehouse and that person is killed and they are a regular member of that organization, they'd be covered. But here we don't have to go that far. In the record, it's testimony from the Pennsylvania State Fire Commission, Mr. Mann. And he said there's absolutely no distinction under Pennsylvania law between firefighters and some novel thing of apprentice firefighters or junior firefighters when it comes to debt benefits. That's in the record. The state of Pennsylvania recognized Christopher Kangas as a firefighter with a statute that is almost identical. In fact, it's even a little bit more strenuous than what I consider to be the easier burden with the federal money. And while I understand the concept that Ms. Kim raises in her brief that the department is not bound by the legal conclusions of a state agency, etc., but they would be bound by factual conclusions, we had the fire commissioner come and testify at the hearing. And he testified that this man was a firefighter, and he testified under Pennsylvania law there would be no such distinction as the Department of Justice eventually found. And that's substantive evidence in the case. There's a reference to the House report, which is quoted by the government in its brief, which seems to me at least somewhat at odds with the breadth that you think the statute and the regulations extend to. And that, let me just, you're familiar with it. It's at page 17. Your Honor, I have it in the appendix. It's page 40. Intended that the regulations should make clear that a simple accident which occurs in the performance of routine non-hazardous duties is not within the scope or coverage of the rationale of the bill. In other words, the bill does not cover routine firehouse activities. It seemed to me that you were suggesting that. That does stand at odds with what I've been saying. But, Your Honor, you're the one that got me down that road. I wasn't trying to go there for Chris Kangas. But what happened here is that the Department of Justice cherry-picked, as we call it. They took language out that they like and put it in and totally ignored what came before it. And if I may, it's on page 40 in the appendix, analysis of the bill. Since firefighting has been determined to be one of the most hazardous professions, the committee is of the opinion that coverage should extend to all activities performed by firemen when they are actually directly engaged in firefighting. And let me give you an asterisk here. This was the House bill. It was actually introduced by Congressman Sarbanes. It went to a joint conference. And they took out the actually directly engaged in fighting fires. They took that language out. So here was a statute that was going to provide a more onerous fact situation than what the law now says. In addition, in view of the occupational risk confronting firemen, the committee intends that the potentially dangerous coverage should be broadly interpreted to include firemen who die accidentally while in the process of responding to a fire. That's my case. My client died accidentally responding to a fire. We're not talking about a theoretical guy that is sitting somewhere. It's right in the legislation. Isn't, though, the critical point, one way or the other, whether Christopher Kangas qualified as a firefighter? Absolutely. Only if he's a firefighter do you get to the next level of whether it was in the line of duty. Mr. Kangas, we don't want his name on a monument because he came in some back door. He's a firefighter. That's what Judge Warren found. That's why these people are here with me today. We have to tell these junior firefighters they are valued and they are covered by this act, not because of some emotional thing that I'm trying to give to the court, but because of what the whole history is of this act, what it's intended to do, how it's written, how broad it is, and also because of the horrible message that it would send out to everybody that's 14 and 15. You're not valued. We're not going to recognize you if you die. We're not going to give your family any benefits. What a slap in the face. Okay. Any more questions for Mr. Daly? No. Thank you, Mr. Daly. Thank you. Ms. Kim? You can add a couple of minutes since you're running over. Thank you. I just want to respond that there are two separate issues, inquiries here. One is the status of the individual, and then there's a line of duty analysis. So first you have to look at whether they are a firefighter. If they are a firefighter and they die while working on their desk, that is covered under the line of duty analysis, and if their primary function was to fight fighters, they would be covered benefits under that act. You mean they would just say a heart attack on a day when there wasn't a fire? I'm not sure if it was a heart attack. I think that might fall under pre-occupational diseases or other. It would be precluded under a separate part of the act. But let's say, I don't know, the firefighter, that building got attacked. There's no such exception in the statute that if you die of natural causes, then you're not covered, but if it's some kind of unnatural cause, let's say shock at hearing of something terrible that's happened in a fire, you're covered. Your Honor, I'm not specifically aware of that issue because that wasn't raised in this case. I think the point is that for purposes of this case, all we're looking at is whether the individual qualifies as a firefighter or not. What do you say to Mr. Daly's argument that under your regulations, a dispatcher would be covered? You remember he made that argument. He said that your regulations cover dispatchers. That was in response to my question. He said, well, you wouldn't have to go that far. He thinks it's kind of silly maybe, but that's the rule that you've adopted. You heard that argument. Yes, I did hear that argument. I don't agree with that argument, Your Honor. If they're trying to come in under a firefighter, a radio dispatcher wouldn't necessarily be a firefighter. That person might be authorized to fight fires, and if he was actually performing the duties of radio dispatch at the time he died, that would be a line-of-duty analysis. But for purposes of whether he's a firefighter, we're looking at whether he's authorized to fight fires, and that is here determined by Pennsylvania law. Have you had any response to the legislative intent in the legislative history stating that there should be a breadth, that there are incentive purposes to a, I'll say, generous interpretation of firefighter? The government's position seems to be opposed to that view. That's correct, Your Honor. This bill was a compromise position. Initially, they wanted firefighting responsibility if they declared firefighters should be done by the states, but the states were not providing adequate compensation. If it's a compromise, it still has a very broad statement. I don't know what had been compromised out, but there's still a statement which seems to be quite directly at odds with the policy foundation of your argument. The purpose of the act was to provide compensation for firefighters and law enforcement officers because they faced significant risk in their jobs going into burning buildings or chasing after criminals. The apprentice firefighters don't face that same risk because the child labor law prevents them from actually going into a building and fighting the fire. But under your approach, Ms. Kim, you could have a situation where someone who had the role of Christopher Kangas as an apprentice fireman, in one state the family might be entitled to the benefit, in another they wouldn't. That's correct, Your Honor. If in another state they didn't prohibit 14-year-olds from fighting fire. Is there a problem with that lack of uniformity? No, Your Honor. The act, the agency consistently interprets the firefighter and law enforcement officer to determine whether they have authority to do that. Let me just ask you one thing as time is about to run out. Do you know of any state, is there any state to your knowledge, you may not be able to answer this, where someone at the age of 14 could perform what anyone would recognize as firefighting duties? Your Honor, I don't have specific knowledge with all the states, but I imagine that there could be a state where a 14-year-old could do that. Okay. Thank you, Mr. Jones. Thank you, Mr. Jones. Your Honor, can I just read one paragraph and supplementary information? You may already. Firefighters, police officers. I'm reading from the Title 28, Chapter 1, Part 32, Public Safety Officers' Death Benefits. This is in the CFR? Yes. This is from 1977. So this was the original regulation. I'm sorry, this is the 28th CFR section? It's Section Part 32, Chapter 1, Part 32. Okay, 32.1. None, Your Honor. It's under what they call supplementary information, telling you what's going on and what's changed. So what I was trying to quickly do is read, Firefighters and the other officials listed in the statutory definition of law enforcement officer and fireman perform these activities as a primary function of their jobs. Even those officers performing desk assignments are primarily involved, even though indirectly, in control of crime, reduction of crime for firefighting. So they have somebody sitting at a desk who's involved. Ms. Kim, do you need the last word on that point? I think we have the citation. Thank you, Your Honor. I just want to make the point that that language that you read goes to a line of duty analysis, doesn't go to whether that person qualifies as a firefighter. Thank you. Thank you both. The case is taken under submission. Thank you.